UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rosa B. De La Torre , <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security, <br><br> Defendant | No.  1:25-cv-01127-GSA <br><br> **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY** <br><br> (ECF No. 15, 17) |

### I.    Introduction

Plaintiff Rosa B. De La Torre seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.

### II.    Procedural Background

On December 30, 2022, Plaintiff applied for Social Security Disability Insurance Benefits alleging a disability onset date of February 17, 2022, which was the date she was involved in a car collision while travelling at a speed of 60 mph, resulting in injuries to her wrists, clavicle and ankle. Plaintiff's application was denied initially on May 11, 2023 (AR 57–73), and upon reconsideration on April 5, 2024.  AR 75–82.  An administrative hearing before an ALJ was held on October 1, 2024. AR 32–56.

The ALJ issued an unfavorable decision on October 15, 2024.  AR 12–31.  The Appeals

1

Council denied review on July 9, 2025. AR 1–5.  Plaintiff now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3).

**III.    The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C.

§1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a Claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the Claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the Claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the Claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the Claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 17, 2022.  AR 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis and osteopenia of the right foot and ankle, status post open reduction internal fixation.

The ALJ also found at step two that Plaintiff had non-severe impairments of left wrist fracture, left clavicle fracture, hypothyroidism, and hyperlipidemia.  AR 18–19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 404.1567(c) (frequently lift 25 pounds and occasionally 50 pounds) with the following additional limitations:

"she can frequently push and pull with the right lower extremity, can occasionally climb and crawl, and can frequently crouch."  AR 20.

At step four, the ALJ found that Plaintiff could not perform any past relevant work.  AR 25. At step five, relying on the VE's testimony, the ALJ found that considering the Plaintiff's age, education, work experience and RFC, the Plaintiff could perform the following jobs existing in significant numbers in the national economy: industrial cleaner, hospital cleaner, and dining room attendant.  AR 26.

Accordingly, the ALJ concluded that the Plaintiff was not disabled since the alleged disability onset date of February 17, 2022.  AR 26.

## V.    **Issues Presented**

Plaintiff asserts one claim of error: "The ALJ Failed To Provide Clear And Convincing Reasons To Reject The Subjective Symptoms Of De La Torre."  MSJ at 4.[1]  In lieu of summarizing the relevant evidence herself, Plaintiff stipulates that the ALJ accurately summarized the medical and vocational evidence except as specifically stated in her brief.  MSJ at 3–4.

### A.    **Subjective Symptoms**

#### 1.    **Applicable Law**

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding

---

[1] Plaintiff's claim of error is mostly encapsulated in her statement that "De La Torre was hospitalized for a week at the time of the motor vehicle accident that caused her impairments and required a period of rehabilitation. AR 545. There is no question that she was incapacitated during this period, however, after a period of recovery from her lower extremity surgery she did not recover the ability to perform medium work. AR 581."

subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the Claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the Claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the Claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a Claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the Claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the Claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.     **Subjective Symptom Testimony**

Briefly by way of background, Plaintiff is originally from Mexico, was 59 years old on the alleged onset date of February 17, 2022, and engaged in physical labor for most of her career. AR 209; 581. She was involved in a car accident on February 17, 2022, while travelling at a speed of 60 mph resulting in injuries to her wrists, clavicle, and chiefly for the purpose of this appeal, her right ankle which required surgical repair (open reduction internal fixation, or "ORIF").  AR 545;1123.

Years later, she testified that she was able to bend her foot normally and walk slowly but not as well as before her injuries; she could wash dishes but at a slow pace (AR 224–25); before

5

her injury she could walk and drive normally  (AR 225); she could prepare meals but stand at most 10 minutes (AR 226, 229); and, she could only lift 15 pounds and had trouble bending and reaching. Id. AR 256.

### 3.  Discussion: Medical

Plaintiff was hospitalized for 6 days following the car accident (AR 545), and as Plaintiff explains, and Defendant does not dispute, she was incapacitated during this hospital stay. Plaintiff contends that she still has not recovered the ability to perform medium work which she states is chiefly due to ongoing issues with her right ankle fracture status post ORIF, and importantly this is the only severe impairment the ALJ found, which is not disputed.

Therefore, because Plaintiff's right ankle is at the center of this case the following discussion will move past the ALJ's discussion of the car accident,  immediate aftermath, 6- day hospital stay, and ORIF surgery of the right ankle.  We thus begin with the ALJ's following discussion:

> On March 11, 2022, the claimant underwent removal of external fixator and open treatment of tibial plafond fracture, tibia only (Ex. 1F:245). On March 28, 2022, the claimant reported that her pain was improving and she was using Norco 5 mg once a day (Ex. 3F:12).  Right tibia/fibula xrays in May 2022 revealed distal tibia and distal fibular fractures, status post ORIF, in stable alignment; tiny cortical fracture at the proximal aspect of the medial tibial side plate; and intact transfixing hardware (Ex. 1F:691). Right ankle x-ray in June 2022 revealed progressive healing distal tibial and fibular fractures, with intact hardware (Ex. 1F:688).
>
> The claimant underwent physical therapy from August 3, 2022 through November 11, 2022 (Ex. 2F:8-55). X-rays of the tibia/fibula in October 2022 showed bony undermineralization; status post ORIF of distal tibia and distal fibula fractures; intact transfixing hardware; and no acute bony abnormality (Ex. 1F: 686).

AR 21 (emphasis added).

Here, the ALJ's discussion notes two pertinent facts that are easily within layperson understanding:[2]  1- generalized pain improvement with Norco 5mg; and 2- an x-ray in June 2022 that revealed progressive healing.  On balance, these treatment notes suggest Plaintiff was moving

---

[2] It is of note that some of what is contained the ALJ's cited and documented facts referenced above appear to lie beyond layperson understanding.

toward functionality.

The ALJ next noted the following:

Physical examinations during treatment found the claimant had tenderness to palpation (TTP), antalgic gait, decreased ankle range of motion (ROM), decreased strength on right and edema (Exs. 2F:12-13, 30, 53, 54; 3F:14; 12F:12, 16). However, additional examination findings noted the claimant was in no acute distress with healed scars, normal range of motion, full range of motion on right foot, no edema, normal gait, and 5/5 strength in upper in lower extremities (Exs. 8F:39, 41, 46, 50; 12F:12, 19).

AR 21–22 (emphasis added).

Here, the ALJ's discussion is largely in laymen's terms.  In short, at times during recovery, gait, ROM and strength were abnormal while at other times they were normal.  Scar healing was also noted, but this observation is not pertinent to the RFC.  On balance, these findings do not significantly support or detract from the notion that Plaintiff's right ankle was on track toward recovery.

The ALJ further noted:

The claimant attended a comprehensive orthopedic consultation with orthopedic surgeon Micheal Price, M.D. on December 27, 2022. She reported ongoing pain in the right ankle and left wrist at 8/10 on a constant basis with limitations of standing, walking, going up and down stairs as well as gripping, pulling, lifting and sleeping. She reported taking anti-inflammatories and analgesics. Right ankle/tibia examination revealed multiple healed incisions of the right ankle and distal tibia with palpable hardware and TTP, but no sign of infection, drainage or open wounds; extremely limited subtalar and ankle motion; good perfusion to the tip of toes; decreased sensation to light touch about the right ankle regions in the area of the incisions . . . Dr. Price recommended updated x-rays of the right ankle . . . (Ex. 4F).

AR 22.

The remainder of the paragraph, though not produced here, addressed the wrist and clavicle which are not at issue.[3]  Of relevance however, Plaintiff reported ongoing pain in the right ankle at level 8/10 which impacted her activities.    Importantly, the ALJ acknowledged extremely limited

---

[3] Ellipses will be used going forward to omit discussion of Plaintiff's medical conditions that are not relevant to the right ankle.

subtalar and ankle motion which would **see**mingly have a very negative connotation as it relates to ankle functionality.  To be sure, this examination finding by Dr.  Price is of importance given that the primary issue here is the structural integrity of the ankle joint status post-ORIF, and the ability of that joint to withstand the demands of medium exertional work.

The ALJ continues noting the following:

Dr. Price saw the claimant for a follow-up consultation on January 10, 2023. She presented with ongoing pain ranging between 2-5/10 in the below body parts with particular discomfort with right ankle motion when she is going up and down stairs. Plain film x-rays obtained of the right tibia, right ankle, left wrist, left forearm and left clavicle which were performed on December 31, 2022 were reviewed by Dr. Price. The images of the left wrist . . . The x-rays of the left clavicle . . . X-rays of the right ankle showed internal fixation of the tibia and fibula with fractures appearing to heal. The claimant was diagnosed with status post ORIF of right ankle fracture, status post left wrist surgical intervention, and status post left clavicle fracture (Ex. 5F).

AR 22.

Although Dr. Price states that Plaintiff's ankle fractures were "appearing to heal", the ALJ continues the factual recitation as follows:

The claimant attended an internal medicine consultative evaluation with Roger Wagner, M.D. on April 16, 2023. She presented with chief complaint of right ankle fracture, left wrist fracture and left clavicle fracture.  She reported that she cooks, cleans, drives short distances, shops and performs her own activities of daily living and walks for exercise. She was on no medications. She was easily able to get out the chair and walk at a normal speck back to the exam room without assistance. She had an extremely minimal limp on the right side when ambulating. She sat comfortably and was easily able to get on and of the exam table and bend at the waist to take off her shoes and put them back on, demonstrating good dexterity and good flexibility. She had good dexterity in both hands and was able to make a good fist. She had normal ROM of the wrists. She had some very minimal tenderness just proximal to the thumb carpometacarpal joint on the left wrist. On exam of the right ankle, there was broadening and a number of scars both medially and laterally. She complained of tenderness medially and laterally. There was no swelling or redness. Her gait showed very minimal limp on the right side. She had normal finger nose and negative Romberg. She used no assistive device. Straight leg raise was negative both seated and supine. Strength was 5/5 in the bilateral upper and lower extremities with the exception that right foot dorsiflexion was 3+/5 and right foot plantar flexion was 4+/5. The claimant was diagnosed with right ankle fracture and left wrist fracture (Ex. 6F).

AR 22–23.

Here, even though Dr. Wagner noted benign or largely benign findings as to swelling, redness and

muscle strength, of concern is the notation that lower extremity muscle strength was 5/5 "with the exception that right foot dorsiflexion was 3+/5 and right foot plantar flexion was 4+/5."[4] These two right foot findings are significant.[5]  For reference, a score of 4- denotes "Ability to move through full range of motion and hold against slight pressure; or breaks abruptly with pressure."  Id.  A score of 3 by contrast denotes the "Ability to move through full range of motion against gravity," meaning gravity only, with no resistance by the examiner.  A score of 3+ would thus correspond to something between the two.

These two right foot scores suggest that Plaintiff's noted "very minimal limp" could potentially, and perhaps likely, progress well beyond "very minimal" during weight bearing 6 of 8 hours per workday as is required for medium work (SSR 83-10).

The ALJ continues:

> Dr. Price saw the claimant for a follow-up consultation on December 19, 2023. The claimant indicated that the pain level continued at 3-5/10 in the right ankle. Her left upper extremity pain was 0-2/10 and tolerable and did not limit activities of daily living. Dr. Price diagnosed status post ORIF of right ankle fracture, status post left wrist surgical intervention, and status post left clavicle fracture. Dr. Price indicated that the claimant will eventually require a right ankle replacement or fusion (Ex. 9F).

> Right foot-x-ray in July 2024 revealed osteopenia, healed lateral malleolar fracture with ORIF hardware, healed medial malleolar fracture with ORIF hardware, and healed anterior and posterior malleolar fracture with ORIF hardware (Ex. 12F:49).

Plaintiff contends that despite healed fractures, her residual osteopenia (bone density) 2 years post-surgery signifies continued functional limitations that preclude medium exertional work.

### 4. Discussion: Opinion Evidence

The ALJ finishes with a discussion of the opinion evidence. But before addressing this discussion it is important to emphasize that the RFC reflects medium work (frequently lift 25

---

[4] A score of 5 = "normal strength"; 4+ = "Ability to move through full range of motion and hold against strong pressure;" 4 = "Ability to move through full range of motion and hold against moderate pressure;" 4- = "Ability to move through full range of motion and hold against slight pressure; or breaks abruptly with pressure." 3 = "Ability to move through full range of motion against gravity." https://www.kumc.edu/Documents/fshd/ManualMuscleTesting.pdf

[5] Dorsiflexion is the upward movement of the foot which brings the toes closer to the shin which is essential for walking, running and squatting, while plantar flexion is the downward movement of the foot away from the leg which is crucial for walking, running and jumping.

pounds, and occasionally 50, and walk 6 of 8 hours, SSR 83-10).

Pertinent to this,  the ALJ evaluated the following medical opinions: 1- state agency consultant Dr. Pham, from the initial determination, who opined to a range of light work, lifting no more than 25 pounds frequently or occasionally; 2- state agency consultant Dr. Hunter, from the reconsideration determination, who opined to medium work; 3- psychiatric opinions not at issue; and 4- consultative examiner Dr. Wagner's opinion as to medium work.

Here, the ALJ rejected Dr. Pham's opinion, which was inconsistent with the RFC, and in large part accepted the opinions of Drs. Hunter and Wagner which were consistent with the RFC. AR 24.  In support, the ALJ simply reiterated the same findings from the original analysis the ALJ articulated in support of the RFC.  No new ground was broken in this explanation.

Thus, considering then the above-described medical findings and the ALJ's descriptions thereof pertinent to the right ankle, the RFC lacks support. Specifically, the weight of the positive and negative findings are significantly in tension with an RFC for medium exertional work given Plaintiff's limited ankle ROM, weakness, limping and osteopenia.

Even though Plaintiff states  that she is somewhat functional with basic ADLs and self-care, of concern is that  the RFC is not for a reduced range of sedentary work, nor even for light work, it is essentially for a full range of medium work which comprises the same exertional requirements as Plaintiff's past relevant work per the VE: frequently lift 25 pounds, occasionally lift 50 pounds, and stand/walk 6 of 8 hours.

A claimant like Plaintiff need not be "completely debilitated" to be considered eligible for benefits.  Here, the facts and findings set forth above pertaining to the functionality of Plaintiff's right foot is inconsistent with her ability to perform the requirements of medium exertional work.

In sum then, it has not been sufficiently demonstrated that Plaintiff would be able to perform medium exertional work.

**VI.    Conclusion and Order**

For these reasons, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 15) is **GRANTED**.

2. Defendant's cross motion (Doc. 17) is **DENIED,** and

3. The matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), consistent with the Court's findings.[6]

IT IS SO ORDERED.

Dated:   **March 2, 2026**                            **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff suggests that a favorable finding by the Court here should result in remand with instruction to award benefits.  But Plaintiff does not explain why her inability to perform medium exertional work should automatically result in an award of benefits.  Further, as the Ninth Circuit has explained, "Generally when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotations omitted).

11